# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-14-231-R |
| | ) | |
| MATTHEW LANE DURHAM | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant has filed a Motion to Suppress Kim Kimberling's Counseling Records (Doc. No. 62), to which the United States has responded. The Court conducted a hearing on the issue on February 4, 2015, advising the parties at the hearing that the issue would be taken under advisement. The Court has considered the parties' submissions and finds as follows.

The issue before the Court is whether Defendant's records as compiled by Dr. Kimberling are privileged such that the government, via grand jury subpoena, was not entitled to discovery thereof.

> The Court applies federal common law to resolve defendant's assertion of privilege. See Fed.R.Evid. 501. The Supreme Court has cautioned that evidentiary privileges contravene the fundamental principle that the public has a right to every man's evidence. *Trammel v. United States*, 445 U.S. 40, 50 (1980) (citation omitted). Accordingly, the Court strictly construes evidentiary privileges and accepts them only to the very limited extent that excluding relevant evidence "has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.* (quotation and citation omitted).

*United States v. Hudson*, 2013 WL 4768084, *1 (D.Kan. Sept. 5, 2013). Defendant claims

two privileges, the psychotherapist-patient privilege and the clergy privilege. As the party asserting the privilege, Defendant bears the burden of establishing that the materials sought by the subpoena were privileged.

The parties do not dispute the existence of a psychotherapist-patient privilege, which undoubtedly applies to "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment." *Jaffee v. Redmond,* 518 U.S. 1, 15 (1996). The United States argues, however, that the privilege enunciated in *Jaffee* does not apply, because Kim Kimberling is not a licensed psychotherapist. His credentials include a Ph.D. in Christian Counseling from the American Christian College and Seminary, a Doctorate of Ministry in Christian Counseling from Patriot University, a Masters in Theological Studies and a Masters in Christian Ministry, both from the International School of Theology, and a Bachelors in Business Administration from Texas Christian University. He is a Board Certified Professional Counselor with the American Psychotherapy Association and an ordained minister with the Church of God, although he does not lead a church. Under the Government's interpretation, there is no dispute that Defendant's records would not be privileged, because although Dr. Kimberling has amassed substantial credentials in the field of counseling, he has chosen not to pursue licensing by the state of Oklahoma.

Defendant, on the other hand, argues for use of a reasonable belief test, asserting via affidavit that "Dr. Kimberling was known to me as a licensed professional counselor and/or psychotherapist who also conducted Christian counseling." Doc. 62, Ex. 3, ¶ 3. He further

contends that he considered the information he divulged to Dr. Kimberling to be personal and confidential absent his signing of a release. *Id. ¶ 5*.

Accordingly, the issue presented with regard to psychotherapist-patient privilege is whether Defendant has established he is entitled to the privilege, because it is not limited to licensed psychotherapists, as to include Dr. Kimberling, or because the privilege extends to persons who the patient reasonably believed was licensed. *See e.g.* Okla. Stat. tit. 15 § 2503.

There is no consensus among federal courts that have been faced with this issue. In *Oleszko v. State Compensation Ins. Fund*, 243 F.3d 1154 (9th Cir. 2001), the court extended the *Jaffee* privilege to unlicensed counselors employed by the State Compensation Fund's Employee Assistance Program. The plaintiff sought information about communications by other employees to the EAP counselors to support her contention of a pattern of sex and race discrimination and retaliation by her employer. The EAP was "staffed by a coordinator and three consultants. Although no one on the staff is a licensed psychiatrist, psychologist or social worker, all of the consultants have backgrounds in psychology or social work, including relevant clinical and/or field experience." *Id.* at 1156.

> The reasons for recognizing a privilege for treatment by psychiatrists or social workers apply equally to EAPs. EAPs, like social workers, play an important role in increasing access to mental health treatment. Growing numbers of EAPs help employees who would otherwise go untreated to get assistance. The availability of mental health treatment in the workplace helps to reduce the stigma associated with mental health problems, thus encouraging more people to seek treatment. EAPs also assist those who could not otherwise afford psychotherapy by providing and/or helping to obtain financial assistance.

*Oleszko*, 243 F.3d at 1157-58 (internal citations and footnote omitted). After further

consideration of EAPs and their role in providing mental health treatment, the court concluded:

> Given the importance of the public and private interests EAPs serve, the necessity of confidentiality in order for EAPs to function effectively, and the importance of protecting this gateway to mental health treatment by licensed psychiatrists, psychologists, and social workers, we hold that the psychotherapist-patient privilege recognized in *Jaffee v. Redmond* extends to communications with EAP personnel.

*Id.* at 1159.

Similarly, in *United States v. Lowe*, 948 F.Supp. 97, 99 (D.Mass.1996), the court extended the psychotherapist-patient privilege to rape crisis counselors who were not licensed psychotherapists or social workers but were under the direct control and supervision of a licensed social worker, nurse, psychiatrist, psychologist, or psychotherapist. Therein the defendant sought records of the alleged victim of the rape for which he was on trial. The court noted that *Jaffee* was not controlling, that a majority of states have adopted a privilege for rape counseling communications, and concluded that "[i]n light of the policies expressed in *Jaffee*, this Court agrees that a client of a rape counselling center holds some form of a federal privilege for communications with a rape crisis counsellor, a privilege that the client can waive." *Id.* at 99. The court, however, did not determine the degree of protection, finding that the victim had waived the privilege. *Id.* at 100.

In *United States v. Hayes*, 227 F.3d 578, 587 (6th Cir. 2000), the court extended the privilege to an unlicensed social worker employed by the Veteran's Administration before concluding that the threats made by the Defendant were not subject to the privilege. *But see*

4

*id*, 227 F.3d at 588 (*dissent*, noting that the government had not argued that the lack of licensing was a relevant consideration). In *Richardson v. Sexual Assault/Spouse Abuse Resource Center, Inc.*, 764 F.Supp.2d 736 (D.Md. 2011), the court held that the psychotherapist-patient privilege applied to a communication with an unlicensed counselor, who worked under the direct supervision of a licensed social worker, at a domestic abuse resource center.

These cases, however, do not convince the Court that the issue of licensure is irrelevant or debatable. The Court is most persuaded by the decision in *Jane Student 1 v. Williams*, 206 F.R.D. 306, (S.D.Ala. 2002.). Therein records from six employees were sought, four of whom were licensed professional counselors or licensed social workers. The other two were described as possessing advanced degrees. In rejecting extension of the privilege to these two persons, the court criticized the Ninth Circuit's opinion in *Oleszko*:

> As a telling threshold matter, the Ninth Circuit did not acknowledge the bedrock principle that American jurisprudence is firmly biased in favor of testimony and against privilege such that "[w]hat ever their origins, these exceptions to the demand for every man's evidence are not lightly created not expansively construed, for they are in derogation of the search for truth." *United States v. Nixon*, 418 U.S. 683, 709, 94 SC.t. 3090, 41 L.Ed.2d 1039 (1974).
>
> Second, the *Oleszko* court missed the significance of the Supreme Court's limitation of the privilege to licensed professionals. This restriction was not required by the facts of the case, because the case did not involve a psychiatrist or psychologist, licensed or unlicensed. Had it believed such a privilege appropriate, the Court could have extended it to unlicensed psychiatrists and/or psychologists as some states have done. That the Court did not do so suggests that it considered the professionals licensed status to be an important prerequisite
>
> Among other functions, the licensing requirement establishes a bright

line for the boundaries of the privilege so that both professional and patient may be clear about the confidentiality of their communications. Moreover, the *Jaffee* court identified the overriding public good justifying the privilege as that of promoting the mental health of the citizenry; licensure provides a minimum, if rough, measure of assurance that the privilege is implicated only when the patient communicates with one who, by satisfying the requirements for licensure, has demonstrated some threshold level of ability to assist the patient in improving her mental health.

*Id.* at 309. *See also Adams v. BNSF Ry. Co.*, 2014 WL 4415985 (E.D.Wash. 2014)("However, based on the present record, the Court is not convinced there are any records from 'licensed psychiatrists and psychologists' or 'licensed social workers.'"); *Lennon v. Seaman*, 2002 WL 109525 (S.D.N.Y. 2002)(defendant has not provided the court with any substantiation either that Mr. DeBilio is a licensed psychotherapist or that their communications transpired during the course of treatment.").

In *United States v. Whitney*, 2006 WL 2927531 (D.Mass. 2006), the court concluded:

The second requirement is that the communication involve a licensed psychotherapist. The Supreme Court in *Jaffee* held that the privilege applies to communications to "licensed psychiatrists and psychologists" and "licensed social workers." 518 U.S. at 15-16. Given the Court's express use of the term "licensed," and in light of the vigorous dissent opposing the extension of the privilege even to licensed social workers, 518 U.S. at 27-35, it seems clear that the privilege does not apply to social workers, counselors, clinicians, advocates, and other counseling personnel who are not licensed, even if they are performing therapeutic functions.

*Id.* at *3.

Furthermore, in assessing the propriety of new privileges, at least one court has noted that *Jaffee*'s extension of the privilege to licensed social workers in the course of

psychotherapy created a bright-line rule. "There is little definitional problem with the application of this privilege. The court need only ask: Does this "social worker" have a license? If the answer is "yes," then the privilege applies; if it's "no," the privilege does not." *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1158 (D.C. Cir. 2006).

The Court hereby adopts the rationale of these authorities and concludes that there is indeed a bright-line rule requiring licensing of the psychotherapist and in the absence of licensing of Dr. Kimberling, the Court declines to extend the privilege to his records.[1] Furthermore, the Court is unable to conclude based on the current record that Defendant's visits with Dr. Kimberling were for purposes of diagnosis and treatment. The Court places little value in the affidavit of the Defendant, which was submitted in support of his assertion of the privilege. Defendant did not testify and thus was not subject to any cross-examination on the issue. His father, however, testified as follows at Defendant's detention hearing:

> Q: (Mr. Jones) You did not go to him then or now or send your son there for psychological or – I'm sorry – psychiatric or psychiatric evaluation?
> A: (Kyle Durham) No, sir.
> Q: (Mr. Jones) Or treatment?
> A: (Kyle Durham) No.

Doc. 70, Government's Ex. D, p. 40.

In light of Defendant's failure to establish that the psychotherapist-patient privilege applies, the Court turns to Defendant's assertion of the clergy-communicant privilege, based on his

---

[1] The Court also rejects Defendant's contention that the privilege should apply to those who reasonably believe their confidant is a licensed psychotherapist. Adoption of this standard would blur the bright-line rendering the licensing requirement virtually non-existent.

alleged knowledge that Dr. Kimberling is an ordained minister and that he sought spiritual counseling from Dr. Kimberling.

There is no Tenth Circuit authority outlining the scope of any clergy-communicant privilege, but the Court has little difficulty concluding that the Supreme Court would acknowledge such a privilege, having done so in *dicta* in *Trammel v. United States*, 445 U.S. 40, 45 (1980). The seminal federal case for recognition of such privilege is *In re Grand Jury Investigation,* 918 F.2d 374 (3rd Cir. 1990)("we hold that a clergy-communicant privilege does exist"). The court defined the privilege as protecting, " communications to a member of the clergy, in his or her spiritual or professional capacity, by persons who seek spiritual counseling and who reasonably expect that their words will be kept in confidence."

The court's conclusion was premised in part on Proposed Rule of Evidence 506, which although not adopted, was not rejected, which provided for a privilege with regard to communications with a clergyman. "A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual advisor." Proposed Rule 506(b), 56 F.R.D. 183, 247 (1973). "A 'clergyman' is a minister, priest, rabbi, or other similar functionary of a religious organization, or an individual reasonably believed so to be by the person consulting him." Proposed Fed.R.Evid. 506, 56 F.R.D. at 247. The Advisory Committee noted:

> The choice between a privilege narrowly restricted to doctrinally required confessions and a privilege broadly applicable to all confidential communications with a clergyman in his professional character as spiritual adviser has been exercised in favor of the latter.

8

*Id.*

Accordingly, the Court calls upon this standard in assessing Defendant's assertion of the privilege, and concludes that Defendant has established that he conveyed information to Dr. Kimberling for purposes of spiritual advisement, and further, the Court is willing to extend the clerical privilege to Dr. Kimberling in light of his ordination and the fact that his practice is devoted to Christian counseling and spiritual advisement.

In his affidavit, Defendant indicates that he knew Dr. Kimberling was a minister who conducted Christian counseling and that he believed he was qualified to assist Defendant in a therapeutic setting. Defendant's Motion to Suppress, Ex. 3. At the detention hearing Defendant's father indicated that Defendant was seen by Kimberling for faith counseling:

> Q: (Mr. Jones) He is someone that you and your wife or other members of your church go to and trust and accept and rely on the integrity of the representations to matters that someone may have done and how it interplays with their faith?
> A: (Kyle Durham) Yes, sir.

Doc. No. 70, Ex. 4, p. 40. Mr. Durham concluded this exchange by responding affirmatively when asked if Defendant saw Dr. Kimberling for faith counseling. *Id*. Dr. Kimberling is an ordained minister of the Church of God and performs baptisms, marriages, and engages in Christian counseling. During their time together, Dr. Kimberling prayed with the Defendant, his normal practice in counseling patients. The evidence supports that he was a member of

the clergy.[2] Additionally there is no dispute that both Dr. Kimberling and Defendant believed that what Defendant said to Dr. Kimberling would be confidential, and that Dr. Kimberling's regular employment was as a Christian counselor.

The Court in this action finds many parallels in *Nussbaumer v. State*, 882 So.2d 1067 (Fla.App. 2 Dist. 2004). Therein the court considered whether statements made by a defendant in a case involving an alleged child molester to a pastor who offered him counseling were subject to discovery by the State. Pastor Nussbaumer asserted a state statutory clergy communications privilege when the prosecution sought evidence related to the criminal prosecution against Lowell Bloom. Mr. Bloom initially asserted a psychotherapist-patient privilege in response to a subpoena directed to Pastor Nussbaumer and subsequently adopted the clergy privilege.

The Florida appellate court rejected application of the psychotherapist privilege, which included an exception for lewd molestation, noting that he was not licensed as a psychologist, counselor, social worker or therapist under Florida law, nor did the Defendant believe he was so licensed. The court then considered the clergy privilege under section 90.505 of Florida's Code, which largely parallels Rule 506 of the proposed Federal Rules of Evidence. Pastor Nussbaumer, unlike Dr. Kimberling, actually served as a pastor at a church. He was not, however, Lowell Bloom's pastor. Mr. Bloom testified that he consulted his own

---

[2] Dr. Kimberling testified at the hearing that he uses Christian-based principles to help the persons that he counsels cope with their situation and to realize how their faith can help them. He did not recall informing Defendant or his family that he was an ordained minister, however, the lack of evidence of any such communication is not dispositive.

10

pastor and was referred to Pastor Nussbaumer for "Christian counseling." *Id.* at 1075. The court noted that a substantial part of the sessions involved prayer and biblical studies, and the absence of evidence that the pastor was consulted for purely secular purposes. The court found that the work was in the usual course of Pastor Nussbaumer's practice and discipline[3]

Like the Court in *Nussbaumer*, the undersigned concludes that the clergy-communicant privilege applies under the facts of this case, and Defendant was entitled to the privilege. As such, barring waiver or any exception, the information obtained by grand jury subpoena should not have been provided, and Defendant was entitled to quash the subpoena, had he been given the opportunity to do so.

Finally, the Court considers the government's argument that in cases of alleged child abuse, members of the clergy are mandatory reporters under Okla. Stat. tit. 10A § 1-2-101(B)(1). In fact, Dr. Kimberling advised the Defendant of this requirement. However, Dr. Kimberling made no independent attempt to contact the Department of Human Services as required by statute to report that he believed there were children suffering from abuse. To the contrary, he and his attorney concluded that he did not have evidence which triggered the statute. The court agrees. Furthermore, any such reporting would not eliminate the privilege

---

[3] Pastor Nussbaumer administered several psychological tests to Mr. Bloom at initial meetings. Although he held a Ph.D. in "clinical Christian psychology," he was not licensed by the State of Florida to practice psychology. He was "licensed" by the Florida Association of Christian Counselors and Therapists, a nonprofit organization dedicated to developing and applying biblically based models of counseling and therapy that are supported by sound psychological concepts.

*Id.* at 1077-78. Florida did have an exception that permitted the clergy to perform pastoral counseling without the designation of psychologist or psychotherapist.

with regard to statements made by Defendant to Dr. Kimberling that were not directly relevant to any allegations of child abuse. Thus, certain of the statements gleaned from Dr. Kimberling's records that the United States contends would not be subject to the privilege would remain privileged even if Dr. Kimberling had complied with § 1-2-101(B)(1). *See* Okla. Stat. tit. 10A § 1-4-507 (In any proceeding resulting from a report made pursuant to Section 1-2-101 of this title or in any other proceeding where such a report or any contents of the report are sought to be introduced into evidence, such report, contents, or other facts related thereto or to the condition of the child or victim who is the subject of the report shall not be excluded on the ground that the matter is or may be the subject of the physician-patient privilege or similar privilege or rule against disclosure.").

For the reasons set forth herein, the Defendant's Motion to Suppress is hereby GRANTED.

IT IS SO ORDERED this 23rd day of February, 2015.

*David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE