# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CR-14-231-R |
| MATTHEW LANE DURHAM, | ) ) | |
| Defendant. | ) ) | |

## ORDER

The Defendant, through counsel, has filed a Motion for Recusal and or Disqualification (Doc. No. 426), arguing the undersigned should recuse from further proceedings herein.[1] The Government has responded to the motion. Having considered the parties' submissions, the Court finds as follows.

In support of the motion Defendant relies on 28 U.S.C. § 455(a) and § 455(b)(1). "Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b)(1) provides that a judge "shall also disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." The issue before the Court is whether "sufficient factual grounds exist to cause a reasonable, objective person, knowing all the relevant facts, to question the judge's impartiality." *United States v. Pearson*, 203 F.3d 1243, 1277 (10th Cir.2000); see also *United*

---

[1] Without further explanation Defendant requests recusal by the undersigned and that "the matter be reassigned by a judge outside of this judicial district." Doc. No. 426, p. 29.

*States v. Erickson*, 561 F.3d 1150, 1169 (10th Cir. 2009). "The standard is purely objective. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)(citing *United States v. Gipson*, 835 F.2d 1323, 1325 (10th Cir. 1988)(further citations omitted).

> Additionally, any alleged bias or prejudice by a judge must be personal.
>
> Disqualification under . . .§ 455 must be predicated "upon extrajudicial conduct rather than on judicial conduct," *United States v. Story,* 716 F.2d 1088, 1091 (6th Cir.1983)(*quoting City of Cleveland v. Krupansky,* 619 F.2d 576, 578 (6th Cir.), *cert. denied,* 449 U.S. 834, 101 S.Ct. 106, 66 L.Ed.2d 40 (1980)), and upon "a personal bias 'as distinguished from judicial one,' arising 'out of the judge's background and association' and not from the 'judge's view of the law.' " *Id.* at 1090 (*quoting Oliver v. Michigan State Board of Education,* 508 F.2d 178, 180 (6th Cir.1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975)).

*Green v. Nevers*, 111 F.3d 1295, 1303-04 (6th Cir. 1997). "Bias or prejudice," as used in § 455(b)(1), refers to a "favorable or unfavorable disposition or opinion" only if it was "somehow wrongful or inappropriate." *Liteky v.. United States*, 510 U.S. 540, 550 (1994) (emphasis in original). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.... [They] can only in the rarest circumstances evidence the degree of favoritism or antagonism required" for recusal." *Liteky v. United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Almost entirely Defendant's current allegations are based on adverse rulings by the Court, or conjecture and speculation, none of

2

which provide a basis for recusal. Furthermore,

> [t]he assertion that a judge improperly participated in a case from which he or she should have recused constitutes a charge most grave. Counsel should not make such an assertion precipitously or recklessly nor on unsupported rumor, conjecture, and speculation. To do so is to trifle with the court and the administration of justice.

*Maier v. Orr*, 758 F.2d 1578, 1583-84 (Fed.Cir. 1985). With these standards in mind, the Court turns to application thereof to the case at hand and the Court will address individually and collectively with each ground for recusal raised by Defendant.

This case has been among the most rancorous cases over which the undersigned has presided in nearly thirty-four years on the bench. From its inception, opposing counsel have made personal attacks against one other. The Court was called on to resolve each of these accusations, many on more than a single occasion. The parties filed a multitude of pre and post-trial motions, including requests for disqualification of government's counsel, motions to suppress, and motions alleging misconduct by both sides. The Docket Sheet now contains in excess of four hundred entries.

First, Defendant alleges that the Court prejudged Defendant's guilt by ordering him detained pending trial, after a Magistrate Judge agreed to pretrial release with certain conditions. 18 U.S.C. § 3142(e) requires pre-trial detention if "no condition or combination of conditions will reasonably assure . . . the safety of any other person and the community." The charges against the Defendant were very serious, including the rape of a child no more than 6 years old. The Court looked at the evidence and concluded that the evidence was such that it supported the conclusion that Defendant was a danger to the community. The evidence

3

presented at the preliminary hearing was much the same as presented at trial. The jury concluded, beyond a reasonable doubt, that Defendant committed many of the acts alleged in the Second Superseding Indictment, which charged violation of the same statutes as included in the original indictment. The fact that the undersigned disagreed with the Magistrate Judge does not provide a basis for concluding that the Court was biased or prejudged Defendant's guilt. Furthermore, Defendant did not appeal the Court's order of detention, which was within his right. Any suggestion of bias based on this decision is without merit.

Next, Defendant suggests the Court exhibited bias by allowing admission of evidence that Defendant struggled with wanting to touch children and with homosexuality. According to testimony, while in Kenya, when first confronted by Upendo staff members and a volunteer serving on the same mission with allegations made by children of inappropriate contact, Defendant asked to speak alone with Josephine Wambugu. While with her, Defendant admitted to touching the children. When he returned to the group, with Josephine Wambugu anticipating that he would confess to the group, Defendant instead stated that he struggled with child pornography and being attracted to men. This classically fits the mold of a statement against interest. The admission regarding struggles with his sexuality supports Defendant's subsequent confession regarding sexual activity with J.N.1. The Court notes that the focus of this case was never Mr. Durham's sexual orientation. Rather, he made the statement when challenged about his behavior with children, which was the focus of the case. It should be noted that the Court, on its own motion, during trial, offered to give the jury a

limiting instruction on this issue, which Defendant declined. This evidentiary ruling, which Defendant also challenges via post-trial motion, does not provide a basis for recusal of the undersigned. This contention is without merit.

Defendant next alleges the Court ignored the seriousness of the issue of the coercive nature of Defendant's confession. Defendant filed a Motion to Suppress the confession and among other things, contended the Kenyan Police were involved in obtaining the statement. The Court conducted an evidentiary hearing on the issue, and the evidence presented revealed no evidence of police involvement. Defendant continued to press suppression even without government involvement, in the face of all authority to the contrary. *See Colorado v. Connelly*, 479 U.S. 157 (1986). Furthermore, the Court's instructions to the jury informed jurors that they should carefully examine any statement given by the Defendant:

> In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of the Defendant, and any evidence concerning his treatment while under interrogation, and all other circumstances in evidence surrounding the making of the statement.

Instruction No. 12. Although the Court rejected Defendant's contention that he was entitled to suppression of his confessions, the issue was throughly considered by the Court, and Defendant's contention is without merit.

Next, Defendant alleges misconduct by Plaintiff's counsel, Don Gifford, arguing that the undersigned ignored evidence of his misconduct. Defendant supports this argument, in part, with complaints that Plaintiff's counsel, during closing argument, argued that the case

5

involved violence against the children. Defendant voiced no objection at trial to the references to violence in closing argument. Furthermore, how can it be plausibly argued that the forcible rape of children does not involve violence? In his brief, Defendant says "none of the alleged victims testified that Matthew violently abused them." Although there were no allegations of physical abuse by Defendant outside the context of the rapes, at trial L.M. testified, through tears, that Defendant hurt her when he raped her. Tr. 66. Defendant himself stated that he would hold girls down and rape them and that he forced L.M. to have sex with him. Government's Exhibit 9.

Defendant contends that the Court gave only "superficial" consideration to its allegation of prosecutorial misconduct. It is unclear how Defendant reached the conclusion that the Court did not give serious attention to the allegations of prosecutorial misconduct. All such allegations against an attorney are serious and were taken seriously by the Court in this case. The Court, however, disagreed with Defendant's characterization of the prosecutor's actions. As stated earlier, this case was rancorous, with mutual allegations of misconduct; however, this fact itself does not support recusal.

Next, Defendant is dissatisfied with how the Court handled the issue of Mr. Durham's counseling records. This is particularly perplexing inasmuch as the Court upheld Defendant's claim of privilege as to the records. This issue of privilege was a very close question. At a hearing on the matter, the Government asked the Court to enter a protective order prohibiting Defendant from contacting the counselor because defense counsel sent Dr. Kimberling a letter that could be perceived as threatening. Although the Court did not enter a protective

6

order, defense counsel was asked to not contact Dr. Kimberling pending resolution of the issue of privilege. Ultimately, the Court ruled in favor of Defendant, obviating any need to avoid communication. The undersigned is unable to discern how requesting that counsel not contact the counselor for the short duration the motion was pending is indicative of bias against Defendant.[2]

Next, Defendant raises the issue of the Government's use of a grand jury subpoena, post-indictment, to obtain Dr. Kimberling's counseling records. "'Once a defendant has been indicted, the government is precluded from using the grand jury for the "sole or dominant purpose" of obtaining additional evidence against him.'" *United States v. Thompson*, 944 F.2d 1331, 1337 (7th Cir.1991) (quoting *United States v. Moss,* 756 F.2d 329, 332 (4th Cir.1985)), *cert. denied,* 502 U.S. 1097 (1992); *see also United States v. Gibbons,* 607 F.2d 1320, 1328 (10th Cir.1979) ("[I]t is improper to use the grand jury for the primary purpose of strengthening the Government's case on a pending indictment or as a substitute for discovery, although this may be an incidental benefit." (citations omitted)). However, if a legitimate purpose exists for continued grand jury investigation, the proceeding is proper even though the prosecution obtains incidental benefits. *Gibbons,* 607 F.2d at 1329.

"[T]he law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority," *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300 (1991), and the defendant "bear[s] the burden of rebutting [this] presumption"

---

[2] The letter sent by defense counsel to the counselor alleged what counsel described as "possible ethical, criminal and civil law violations, as well as HIPPA violations." Doc. No. 114-2. The Court's request that counsel not contact Dr. Kimberling was an effort to avoid further muddying of the waters pending resolution of the privilege dispute.

*United States v. Bros. Const. Co. of Ohio,* 219 F.3d 300, 314 (4th Cir.2000). Proving that the government's primary purpose for the second grand jury proceeding was to collect evidence relating to pending charges is a difficult burden to bear. *United States v. Raphael,* 786 F.Supp. 355, 358 (S.D.N.Y.), *aff'd, United States v. Alegria,* 980 F.2d 830 (2nd Cir.1992). Defendant failed in this burden when he originally challenged the subpoena, after Dr. Kimberling complied therewith, and he similarly fails at this juncture. The grand jury did return a superseding indictment charging Defendant with additional counts.

> "There is nothing improper about the government continuing its investigation after an indictment is filed, with obvious limitations, of course." *United States v. Beasley*, 550 F.2d at 266. In sum, the defendants offer baseless speculations and "'nothing beyond [their] own unproved suspicions to prove that [the witnesses] were improperly summoned before the grand jury for the sole or dominant purpose of preparing the pending indictment for trial.'" *United States v. Breitkreutz*, 977 F.2d at 217.

*United States v. Jackson,* 863 F. Supp. 1449, 1455 (D. Kan. 1994). The fact that the Court did not reprimand the government, but rather inquired of their motives and accepted their statements as true in the absence of contrary evidence from Defendant does not support Defendant's contention that recusal is appropriate.[3]

Next, Defendant takes issue with the Government's handling of victim J.N.1. Defendant had access to the forensic interview of J.N.1, wherein he denied that Defendant had engaged in sexual activity with him, despite Defendant's written statement indicating the contrary. Portions of the interview, including the exculpatory statements, were played for the

---

[3]"[A]bsent some indicative sequence of events demonstrating an irregularity, a court has to take at face value the Government's word that the dominant purpose of the Grand Jury proceedings is proper. *See In re Grand Jury Subpoena Duces Tecum Dated May 9, 1990*, 741 F.Supp. 1059, 1061 (S.D.N.Y.1990).

8

jury, which acquitted Defendant on the relevant count of the Second Superseding Indictment. It is unclear to the undersigned how Defendant contends the Court showed bias toward Defendant with regard to J.N.2.

Defendant contends that the Court failed to look seriously about his allegation of misconduct but took the Government's allegation's more seriously. The Court has already addressed Defendant's allegations against the Government. The Government's allegations against Defendant's counsel were quite serious. Most notable was the Affidavit the Government brought to the Court's attention alleging that a witness in Kenya was threatened about his proposed testimony. The affidavit did not allege any wrongdoing against Stephen Jones or his office. However, out of an abundance of caution, and because threats to a witness are considered seriously, the Court inquired of defense counsel regarding the identity of persons in Kenya affiliated with the defense, whose identities had not previously been revealed. The identification was intended to discover whether these same persons might have been involved in the incident wherein the witness alleges he was threatened. The Court would have been remiss had it not followed up on this allegation, the follow-up consisting of a request that defense counsel identify who accompanied defense when they visited Upendo in preparation for trial. Tr. 271-278. Once the requested information was conveyed, the issue was considered resolved. Nothing about this indicates bias by the Court against Defendant.

The Court is baffled by the Defendant's next contention. Defendant alleges that the U.S. Attorney Sandford Coats wrote an *ex parte* communication to the Court about

9

allegations of misconduct by Assistant U.S. Attorney Don Gifford. Defendant makes particular note that the letter was "hand delivered," implying that Mr. Coats and the undersigned must have had an inappropriate conversation about the case. First, this letter was not *ex parte*. A copy of it was sent to defense counsel. Second, the suggestion of something nefarious about a hand delivered letter is totally unreasonable as well as false. Presumably, the letter was brought to the undersigned's office by a runner and given to a judicial assistant. At no time has the Court had any conversation with the U.S. Attorney or anyone else from the U.S. Attorney's office, on an *ex parte* basis about this case.

Defendant believes the Court exhibited bias in denying, in part, his motion to supplement his motion for new trial. He first objects to the Court's denial in regard to an alleged relationship between Assistant United States Attorney Gifford and a news reporter. Defendant's motion to supplement was denied in this regard, because Defendant failed to come forward with a scintilla of evidence that any relationship between Mr. Gifford and the reporter had an impact on the trial. Defendant also alleges an inappropriate relationship between the interpreter for the government and a witness, Eunice Menja. Again, the motion makes no suggestion about how any relationship between the two adversely affected his trial. The Defendant retained his own interpreter, and presumably she would have advised her client, and ultimately the Court, of any misinterpretation by the government's interpreter.[4]

---

[4] The following exchange occurred during the trial.
Ms. Morey:     I have a question, Your Honor. If our interpreter has an issue with something that is being read back into the court by the interpreter that's talking to [L.G.], how would you like me to

(continued...)

This contention lacks merit.

Next, the Defendant alleges the recusal is appropriate because the undersigned is in receipt of evidentiary facts which disqualify him. Section 455(b)(1) mandates recusal where a judge has "personal knowledge of disputed evidentiary facts concerning the proceeding." The undersigned has no such personal knowledge. The Oklahoma County District Attorney delivered a letter to the Court suggesting the Assistant United States Attorney may have failed to turn over *Brady* material to the defense. The Court is aware of nothing of evidentiary value about the conversation other than receipt of the letter. Of course, the Court promptly forwarded the letter to defense counsel and the Government as it might be of value to the Defendant in seeking a new trial. The Court will rule on the *Brady* issue in the Motion for New Trial, but nothing about this argument suggests personal knowledge of any disputed evidentiary facts concerning the proceeding.

Lastly, the Defense finds fault with the Court for meeting with the jury after the trial. For thirty years, this Judge has met with jurors to thank them for their service and to inquire how their service could have been made easier or better. The Court does not discuss substantive issues with the jurors. No attorney in all those years has objected to the procedure

---

[4](...continued)
```
                handle that?
The Court:      How would you like for me to handle it?
                            ***
Ms. Morey:      Well, would you like me to - - I could make an objection when
                that happens.
The Court:      I think that's the appropriate thing to do . . . .
```
Tr. 799-800. Shortly thereafter defense counsel raised an issue with regard to translation of the terms "bathroom" and "toilet." Tr. 815. The only other issues regarding translation recalled by the Court involved translations done outside of Court as raised by Defendant's forensic examiner, this issue did not touch upon the accuracy of the trial translator.

until now.

The Court takes this allegation of bias very seriously. Such allegations go to the very heart of the oath of office taken when a judge assumes office. This is particularly true in a case where the potential outcome is so consequential. The Court has considered each of the issues raised by the Defendant carefully. While some or all of them may provide the basis for an appeal, should that ultimately prove necessary, the undersigned finds that none of the arguments, considered singularly or collectively, suggest that this Court's impartiality might reasonably be questioned.

Defendant's Motion for Recusal and or Disqualification (Doc. No. 426) is DENIED.

IT IS SO ORDERED this 24th day of November 2015.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE