IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. CR-14-231-R |
| | ) |
| MATTHEW LANE DURHAM, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Defendant, appearing through counsel, filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. The Court ordered the Government to respond and Defendant to file a reply, and both have done so. Accordingly, the motion is ripe for consideration. For the reasons set forth herein, Defendant's § 2255 motion is dismissed because the sole claim he asserts is not cognizable under § 2255.

The factual background of Defendant's case is taken from the decision of the Tenth Circuit Court of Appeals in *United States v. Durham*,

> On May 1, 2014, Mr. Durham, then 19 years old, arrived in Kenya on his fourth Christian missionary trip there. ROA, Vol. 12 at 1818 (TT 1204); ROA, Vol. 10a at 25. In Kenya, he volunteered at the Upendo Children's Home ("Upendo"), where 33 children from impoverished backgrounds live. ROA, Vol. 12 at 695-97, 787 (TT 81-83, 173). Upendo Kids International, an Oklahoma non-profit founded and directed by Eunice Menja, operates Upendo. Id. at 787, 960 (TT 173, 346), Aplee. Br. at 3. Ms. Menja's sister, Josephine Wambugu, is the manager of Upendo. ROA, Vol. 12 at 695, 788 (TT 81, 174).
>
> On his previous trips to Kenya, Mr. Durham had stayed with a host family, but on the fourth trip, he asked to stay at Upendo instead. Id. at 1811

(TT 1197). On June 12, 2014, Ms. Wambugu entered one of the girls' bedrooms and saw Mr. Durham lying on a bed with one of the girls. *Id*. at 705, (TT 91). When Ms. Wambugu came into the room, Mr. Durham left quickly. Id. at 705-06 (TT 91-92). Ms. Wambugu then spoke to some of the girls, who said they had "been doing bad manners" with Mr. Durham. ROA, Vol. 12 at 710-11 (TT 96-97). The children used "bad manners" to mean engaging in sexual acts. See id. at 662 (TT 48); 1412 (TT 798); 1443-44 (TT 829-30)

On June 13, Ms. Menja, Ms. Wambugu, Jason Jeffries (another American volunteer at the home), and Tom Mutonga (a local supporter of Upendo) met with Mr. Durham at Upendo. *Id*. at 817, 825 (TT 203, 211). When he entered the meeting, Mr. Durham yelled, "You can fire me, fire me now." *Id*. at 825 (TT 211). Ms. Menja accused him of hurting the girls and asked for his response. *Id.* at 826 (TT 212). Mr. Durham said he did not remember, and asked to speak to Ms. Wambugu alone. *Id.* at 826-27 (TT 212-13).

Once alone, he asked Ms. Wambugu to defend him, and she asked him whether he had done the acts reported by the girls. *Id*. at 723 (TT 109). He said, "Yes, I did it. Yes, I did." *Id*. at 723 (TT 109). But when he went back to talk to the group, Mr. Durham again said he could not remember assaulting the children. He added that he had been struggling with child pornography and homosexuality. *Id.* at 724, 828 (TT 110, 214). Ms. Menja told Mr. Durham she was going to take him to a different location, explaining that, for the safety of the children, she did not want him to stay at the children's home. *Id*. at 829 (TT 215). He spent the next three days at an empty house owned by Ms. Menja's father-in-law. *Id*. at 830 (TT 216). One of the volunteers had taken Mr. Durham's passport after hearing about the allegations. *Id.* at 1052 (TT 438).

During his time away from Upendo, Mr. Durham sent his father text messages stating: "I don't want to live anymore" and "I hate myself. I deserve to burn in hell." ROA, Vol. 9 at 78 (Gov't Exh. 29). He sent a text to Ms. Menja saying: "Tell all the kids how sorry i am, and i am praying for their forgiveness every hour." Id. at 18 (Gov't Exh.10) (errors in original).

Mr. Durham's great-uncle arranged for Mr. Durham to fly back to Oklahoma. ROA, Vol. 12 at 1682-83 (TT 1068-69). On June 17, before he flew out, Mr. Durham met with Ms. Menja, Ms. Wambugu, and Mr. Mutonga at the Seagull restaurant. Id. at 855 (TT 241). Ms. Menja video recorded some of the ensuing conversation in multiple videos on her cellphone (the "Seagull Confession Videos"). Id. at 856 (TT 242). Mr. Durham knew that he was being recorded and asked that the video be kept on. Gov't Exh. 4 at 12:09.

On the longest video, Ms. Menja asked Mr. Durham about the allegations. He responded that he had struggled with a "temptation to touch children and to be with other men." Gov't Exh. 4 at 1:55-2:01. When Ms. Menja started asking about specific children who had accused him of abuse, Mr. Durham admitted to assaulting those children. *See, e.g., id.* at 5:39-6:15.

After Ms. Menja stopped recording the video, she said she could not listen any more, and Mr. Durham offered to write down his confession. ROA, Vol. 12 at 865 (TT 251). He wrote detailed statements about how he abused or otherwise engaged in inappropriate behavior with over ten of the children. ROA, Vol. 9 at 8-16. The following relate to three of the four charges of conviction and each concerns a different victim:

- "I would take her to the bathroom at night and hold her down and rape her. This happened on several occasions. I also made her watch me do things to [another girl]. I told her never to tell anyone, and that I loved her." ROA, Vol. 9 at 8 (Gov't Exh. 9).

- "I would take her to the bathroom and have her take off her clothes. I would touch myself and her. I don't know how many times it occurred. Also, when we had our sleepovers Friday night, [she] always made a point to sleep by me. I would spoon with her until I woke up." Id. at 15 (Gov't Exh. 9).

- "I took her to the bathroom and force[d] her to have sex with me. This happened on more than one occasion. I made her swear to never tell anyone . . . . Any time I try to read the bible or pray, this image comes to my [head]." Id. at 16 (Gov't Exh. 9).

Ms. Wambugu next spoke to the Kenyan police, who told her they could not arrest Mr. Durham. ROA, Vol. 12 at 873-74 (TT 259-60). Ms. Menja returned Mr. Durham's passport to him, and he flew out of Kenya the night of June 17. *Id.* at 874-75 (TT 260- 61).

Ms. Menja took six victims to a doctor the next day, June 18. *Id.* at 875 (TT 261). Medical workers examined them and determined five out of six had perforated hymens. *Id*. at 1187-88 (TT 574-75). Ms. Menja later reported what had happened to the U.S. Embassy. *Id.* at 875 (TT 261).

902 F.3d 1180, 1189-1191 (10th Cir. 2018)(footnotes omitted). Durham was charged with seventeen counts and on June 19, 2015, the jury found Defendant guilty on seven counts of traveling in foreign commerce and engaging in illicit sexual conduct with a minor in

3

violation of 18 U.S.C. § 2423(c). Defendant was acquitted of the remaining counts. Thereafter this Court granted judgment of acquittal on three counts because the prosecution had not proven that Defendant engaged in "sexual conduct" as defined by the relevant statute. Other post-trial motions were denied. The Court sentenced Defendant to 480 months in prison. On appeal the Tenth Circuit affirmed the conviction and sentence.[1] Defendant, appearing through counsel, filed the instant § 2255 motion, arguing he is entitled to a new trial.

Section 2255 entitles a federal prisoner to relief if this Court finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or [is] otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). Defendant's motion argues that the testimony of L.M., L.G., S.W., and J.N. was coerced by Josephine Wambugu, who beat and threatened the children so they would accuse and testify against the Defendant. He argues he "discovered newly discovered evidence of his actual innocence and moves this Court for an evidentiary hearing to support his claim and to vacate his convictions and sentences in this case." (Doc. No. 495, p. 12).

Defendant argues that his right to due process was violated because of alleged witness coercion. The Government contends that Defendant cannot prevail on his due process claim because the alleged coercion was not the result of government action. "The

---

[1] Defendant unsuccessfully sought certiorari review from the United States Supreme Court. *Durham v. United States*, 139 S.Ct. 849 (2019).

Fifth Amendment guarantees that the government will not deprive a defendant of life, liberty, or property without due process of law. U.S. Const. amend. V. This guarantee does not protect against conduct by private parties, [*Colorado v.*] *Connelly*, 479 U.S. [157,] 166, [107 S.Ct. at 521]. . . ." *United States v. Guerro*, 983 F.2d 1001, 1004 (10th Cir. 1993); *see also United States v. Raymer*, 876 F.2d 383, 386 (5th Cir. 1989) ("[t]he relevant test ... focuses ... on the presence or absence of police coercion"); *United States v. McCullah*, 76 F.3d 1087, 1101 (10th Cir.1996)(a statement is involuntary if the government's conduct caused the witness' will to be overborne)(quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26 (1973).[2] Accordingly, Plaintiff argues, Defendant is not entitled to § 2255 relief, because he does not contend that Government's agents coerced the children's testimony.

In reply Defendant argues that the procedural posture of this case distinguishes his argument from those cases in which the issue was the admissibility of testimony. He argues, "it is a motion for a new trial based upon newly discovered evidence of coercion of the minor complaining witnesses." (Doc. No. 500, p. 2).[3] Circling back to Defendant's original argument, the question is whether Defendant may proceed under § 2255 with his claim on the premise that he is actually innocent in light of the alleged recantations. In short, the answer, is no, because a stand-alone claim of actual innocence does not arise under the United States Constitution. Defendant does not argue that his rights were violated

---

[2] The Government addresses the use of knowingly perjured testimony however, Defendant makes no argument that the Plaintiff was aware that one or more of the children testified falsely.

[3] Although Defendant asserts at points that this is a motion for new trial, he relies upon 28 U.S.C. § 2255 as the basis for his claim, not Federal Rule of Criminal Procedure 33. Because Defendant, who is represented by counsel, did not invoke Rule 33 or address the time constraints set forth in Rule 33(b)(1), the Court will limit its consideration to the motion under § 2255. Nothing in the Court's current Order precludes Defendant from properly filing a Rule 33 motion, which would grant the Government the ability to address the timeliness of such a motion should it desire to do so.

because the government withheld exculpatory information that convicted an innocent person. Rather, his claim is a freestanding claim of actual innocence, not cognizable under § 2255.

> Petitioner alleges that newly discovered evidenced demonstrates that a factual injustice occurred, not a constitutional error. As held in *Herrera*, 506 U.S. 390 (1993), a § 2255 does not extend to claims of 'actual innocence' independent of a constitutional claim. Without bringing a constitutional claim within Petitioner's allegation, newly discovered evidence in not a ground for federal habeas relief. *See Herrera*, 506 U.S. at 400. "[W]hat we have to deal with [on habeas review] is not the petitioners' innocence or guilt but solely the question whether their constitutional rights have been preserved." *Id.* (quoting *Moore v. Dempsey*, 261 U.S. 86, 87-88 (1923)).

*Galati v. United States*, 2020 WL 6883450, *3 (D.N.J. Nov. 24, 2020). Similarly, the law in the Tenth Circuit is clear, there is no freestanding actual innocence claim on a § 2255 motion.

> A distinction exists between claims of actual innocence used as a gateway and as a freestanding basis for habeas relief. As a gateway, a claim of actual innocence "enable[s] habeas petitioners to overcome a procedural bar" in order to assert distinct claims for constitutional violations. *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013). Because gateway claims are "procedural, rather than substantive," they do not "provide a basis for relief." *Schlup v. Delo*, 513 U.S. 298, 314–15, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). By contrast, a freestanding claim asserts actual innocence as a basis for habeas relief. *See House v. Bell*, 547 U.S. 518, 554, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009).
>
> The Supreme Court has repeatedly sanctioned gateway actual innocence claims, but the Court has never recognized freestanding actual innocence claims as a basis for federal habeas relief. To the contrary, the Court has repeatedly rejected such claims, noting instead that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceedings." *Herrera v. Collins*, 506 U.S. 390, 400, 113 S.Ct. 853, 122

> L.Ed.2d 203 (1993). In rejecting such claims, the Court has observed that "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence." *Id*. at 401.
>
> We have thus held that actual innocence does not constitute a freestanding basis for habeas relief. *See Vreeland v. Zupan*, 906 F.3d 866, 883 n.6 (10th Cir. 2018) (denying a certificate of appealability because freestanding assertions of actual innocence cannot support habeas relief); *LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence ... does not, standing alone, support the granting of the writ of habeas corpus."); *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998) ("[T]he claim of innocence ... itself is not a basis for federal habeas corpus no matter how convincing the evidence.").

*Farrar v. Raemisch*, 924 F.3d 1126, 1130–31 (10th Cir. 2019)(footnotes omitted).[4] In short, Defendant's argument that his due process rights were violated despite the absence of allegations of government coercion is without merit and he cannot, via § 2255, prevail on his actual innocence claim.[5]

"In a § 2255 proceeding, the district court is not required to grant an evidentiary hearing on a [defendant's] claims where 'the motion and the files and records of the case conclusively show that the [defendant] is entitled to no relief....'" *U.S. v. Miller*, 20 F. App'x 800, 802 (10th Cir. 2001) (quoting 28 U.S.C. § 2255(b)) (unpublished decision cited as persuasive pursuant to 10th Cir. R. 32.1(A)). The record in this case conclusively demonstrates that Defendant is not entitled to relief on his claim because the claim does not assert a constitutional violation.

---

[4] The court in *Farrar* reinforced that federal habeas relief cannot be based on perjured testimony unless the government knew the testimony was false. Id. *at 1131-32*.

[5] The Court acknowledges that if a freestanding claim of actual innocence existed under § 2255 the applicable standard would be the same as the Rule 33 standard for granting a new trial based on newly discovered evidence.

Finally, under Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the defendant. To obtain a certificate of appealability, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Defendant does not assert a recognized constitutional claim, he cannot satisfy this standard. Therefore, he is not entitled to a certificate of appealability.

For the reasons set forth herein, Defendant's motion pursuant to 28 U.S.C. § 2255 is DISMISSED.

**IT IS SO ORDERED** this 9th day of November 2022.

*/s/ David L. Russell*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE